# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1847V

* * * * * * * * * * * * * * * * * * * * * * * *  \*
                                                 \*
                                                 \*
STACIE COGAN,                                    \*
                                                 \*
                    Petitioner,                  \*    Special Master Jennifer A. Shah
                                                 \*
                                                 \*
v.                                               \*
                                                 \*    Filed: July 24, 2025
                                                 \*
SECRETARY OF HEALTH AND                          \*
HUMAN SERVICES,                                  \*
                                                 \*
                    Respondent.                  \*
                                                 \*
                                                 \*
* * * * * * * * * * * * * * * * * * * * * * * *  \*

*Simina Vourlis*, Law Offices of Simina Vourlis, Columbus, OH, for Petitioner.
*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On September 13, 2021, Stacie Cogan ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"), alleging that she suffered from "injuries including, but not limited to[,] serum neuritis, chronic inflammatory demyelinating polyneuritis, vaccine related polyneuritis and seronegative inflammatory arthropathy and their sequelae," caused by the influenza ("flu") vaccination she received on September 27, 2018. ECF No. 1 ("Pet.") at 1.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at  https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On July 1, 2022, Respondent filed his Rule 4(c) Report, contending that entitlement to compensation should be denied. ECF No. 19 at 1. Thereafter, Petitioner filed additional medical records and an affidavit, and both parties submitted expert reports and medical literature. *See* ECF Nos. 21, 26, 28-32, 34, 36-37, 39-46, 50-51, 53-58, 60. On April 25, 2024, the parties filed a status report indicating that they agreed to submit the case to a ruling on the record. ECF No. 62. Petitioner filed a motion for a ruling on the record on August 28, 2024, Respondent filed a response to Petitioner's motion on October 28, 2024, and Petitioner filed a reply brief on December 17, 2024. ECF Nos. 66-67, 69.

On February 6, 2025, Petitioner filed an application for interim attorneys' fees and costs, requesting a total of $161,420.71, comprised of $106,878.70 for attorneys' fees and $54,542.01 for attorneys' costs. ECF No. 71 ("Fees App.") at 5. Although Petitioner requested $106,878.70 for interim attorneys' fees, she provided documentation for $107,864.70 in fees. Fees App., Ex. 172. Respondent filed a response on February 7, 2025, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 72 ("Fees Resp.") at 2. This is Petitioner's first motion for interim fees and costs. Petitioner has not incurred any personal costs. *See* Fees App.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$151,681.71** in interim attorneys' fees and costs.

## I.    Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer,* the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id.*

## B. Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

## C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States*, 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis. . ." *Id.* at 286. The court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y of Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y of Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v.*

*Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs*., 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.  Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008). Although Petitioner's counsel filed the petition for this case in 2021, counsel has worked on this case since 2020 and has not yet been awarded interim fees and costs. ECF No. 1; Fees App., Ex. 172. Counsel has filed medical records, retained two experts, filed six expert reports along with supporting medical literature, and filed a motion for ruling on the record and a reply brief. *See* ECF Nos. 6-8, 13, 21, 28-32, 34, 39-46, 53-58, 66, 69. I find that Petitioner would suffer undue hardship without an award of interim fees and costs.

### B.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 2. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. Petitioner filed

extensive medical records and six expert reports.  I find that Petitioner has maintained a reasonable basis for her claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs as described below.

### C. Attorneys' Fees

Petitioner requests a total of $106,878,70 in attorneys' fees for The Law Offices of Simina Vourlis ("Simina Vourlis").  Fees App. at 5.  But she provided documentation supporting a total of $107,864.70 in such fees.[3]  Fees App., Ex. 172.  Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable.  *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney."  *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience.  *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner requests compensation for her counsel, Ms. Simina Vourlis, at the following hourly rates: $467.00 per hour for work performed in 2020; $491.00 per hour for work performed in 2021; $505.00 per hour for work performed in 2022; $533.00 per hour for work performed in 2023; $553.00 for work performed in 2024; and $575.00 per hour for work performed in 2025. Fees App. at 5, Ex. 172 at 17.  Petitioner also requests compensation for paralegal work at the following hourly rates: $172.00 per hour for work performed in 2021; $172.00 per hour for work

---

[3] The column for time billed on the "ATTORNEY FEES TOTAL" chart differs from the billing entries that Ms. Vourlis submitted.  *See* Fees App. Ex. 172 at 17.  For example, the chart shows that 5.6 hours were billed for work performed in 2025; however, the three entries for 2025 total 6.5 hours.  *Id.*  For 2023, the chart shows 19.7 hours billed; however, the billing entries total 20.2 hours.  *Id.* at 10-13, 17.  For 2022, the chart shows 26.5 hours billed; however, the billing entries total 26.9 hours.  *Id*. at 6-9, 17.  Overall, the charts shows a total of 192.6 hours billed; however, the billing entries total 194.4 hours.  The result is documentation for a total of $107,864.70 in attorneys' fees.  *Id.*

[4] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2025 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.  The hourly rates contained within the schedules are updated based on the decision in *McCulloch*, 2015 WL 5634323.

performed in 2022; $182.00 per hour for work performed in 2023; and $189.00 per hour for work performed in 2024. Fees App., Ex. 172 at 21.

The rates requested for Ms. Vourlis and are consistent with what has previously been awarded for her work, in accordance with the Office of Special Masters' fee schedule. *See Anderson v. Sec'y of Health & Hum. Servs.*, No. 22-1475V, 2025 WL 1752483, at \*2 (Fed. Cl. Spec. Mstr. May 29, 2025); *Yawn v. Sec'y of Health & Hum. Servs.*, No. 23-1964V, 2025 WL 1089636 (Fed. Cl. Spec. Mstr. Mar. 3, 2025); *Carron v. Sec'y of Health & Hum. Servs.*, No. 22-189V, 2023 WL 8114329, at \*2 (Fed. Cl. Spec. Mstr. Oct. 24, 2023). Accordingly, I find Ms. Vourlis' requested rates are reasonable and that no adjustment is warranted.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton*, 3 F.3d at 1521. It is within a special master's discretion to make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at \*13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See*, *e.g.*, *McCulloch*, 2015 WL 5634323, at \*26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be reasonable. I have reviewed the billing entries and find that they adequately describe the work done on the case and the amount of time spent on that work. None of the entries appear objectionable; nor has Respondent identified any entries as objectionable. Accordingly, Petitioner is awarded attorneys' fees in the amount of **$107,864.70**.

### D. Reasonable Costs

Petitioner requests a total of $54,542.01 for attorneys' costs, consisting of $510.61 for medical record requests; $4.40 for postage; $402.00 for a new petition filing fee; $14,300.00 for Dr. Axelrod's expert costs; and $39,325.00 for Dr. Akbari's expert costs. Fees App., Ex. 173 at 1, 27-28, 32; Fees App., Ex. 174; Fees App., Ex. 175.

Petitioner provided documentation for the costs associated with the medical record requests and filing expenses. Fees App., Ex. 173 at 1-26, 29-31. The costs for postage are normal business expenses, so they will be awarded. I find the costs for these items to be reasonable and award them in full. I discuss Petitioner's expert costs below.

#### 1. Petitioner's Expert Costs for David Axelrod, M.D.

Petitioner requests $14,300.00 for 35.75 hours of work performed by Dr. Axelrod at a rate of $400.00 per hour. Fee App. at 8, Ex. 173 at 27-28, 32. Dr. Axelrod has been awarded his requested hourly rate by other special masters, and I see no reason to disturb his request. *See Anderson*, 2025 WL 1752483, at *2; *Jinkerson v. Sec'y of Health & Hum. Servs.*, No. 18-1355V, 2024 WL 3760329, at *4 (Fed. Cl. Spec. Mstr. July 11, 2024). Additionally, I find the overall number of hours expended by Dr. Axelrod to be reasonable, and I will award his expert costs in full.

#### 2. Petitioner's Expert Costs for Omid Akbari, Ph.D.

Petitioner requests $31,825.00 for 71.5 hours of work performed by Dr. Akbari at a rate of $550.00 per hour.[5] Fee App. at 9, Exs. 174-75. However, Dr. Akbari has consistently been awarded a rate of $500.00 per hour for his work in the Vaccine Program, including very recently. *See Baker v. Sec'y of Health & Hum. Servs.*, No. 21-1869V, 2025 WL 1513417, at *4 (Fed. Cl. Spec. Mstr. Apr. 29, 2025) (listing cases in which Dr. Akbari has been awarded $500.00 per hour); *Bristow v. Sec'y of Health & Hum. Servs.*, No. 19-457V, 2022 WL 17821111, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (same); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1390V, 2022 WL 1077311 (Fed. Cl. Spec. Mstr. Feb 23, 2022) (same). Accordingly, Dr. Akbari's rate will be reduced to $500.00 per hour.

Additionally, I find that a reduction in hours is necessary. Dr. Akbari has billed for 71.5

---

[5] The total cost for the 71.5 hours Dr. Akbari performed at a rate of $550.00 is $39,325.00; however, Petitioner paid Dr. Akbari a $7,500.00 retainer. Fees App., Exs. 174-75. Petitioner's $31,825.00 request represents the remaining balance for Dr. Akbari's work. ($39,325.00 total - $7,500.00 retainer = $31,825.00 request).

hours spent on this case. This includes time spent downloading exhibits and references, preparing billing statements, and reviewing medical literature, among other things. *See* Fees App., Ex. 174; Fees App., Ex. 175.

Fees for experts are subject to the same reasonableness standard as fees for attorneys. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *Baker v. Sec'y of Health & Hum. Servs.*, 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005). Here, several of Dr. Akbari's billing entries are for administrative tasks that are not compensable in the Vaccine Program. For example, Dr. Akbari billed 3.00 total hours to download 48 "references as PDF and highlight appropriate sections for the court" and 1.20 total hours for "preparation of statement of hours." Fees App., Ex. 174-75. Such entries are considered administrative and are therefore not compensable. Dr. Akbari has previously been warned against billing for such tasks. *See Williams v. Sec'y of Health & Hum. Servs.*, No. 19-1269V, 2024 WL 1253768, at *4 (Fed. Cl. Feb. 28, 2024); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *6 (Fed. Cl. Spec. Mstr. Feb 23, 2022).

Additionally, an expert may be compensated only for the number of hours reasonably expended by the expert. *King ex rel. King v. Sec'y of Health & Hum. Servs.*, No. 03-584V, 2010 WL 5470787, at *4 (Fed. Cl. Spec. Mstr. Dec. 13, 2010) (indicating that counsel had a "duty to 'monitor the expert's overall fees to ensure that the fees remain reasonable."); *Hines*, 22 Cl. Ct. at 754 ("The special master is within his discretion in reducing hours that are duplicative, padded, spent on unrelated matters, or not 'reasonably expended.'") (quoting *Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 11 (1990)). Other special masters have also previously reduced Dr. Akbari's hours for excessive time spent reviewing medical literature. *See Walters v. Sec'y of Health & Hum Servs.*, No. 15-1380V, 2021 WL 3928993, at *7-8 (Fed. Cl. Spec. Mstr. June 16, 2021) (deducting 20% of Dr. Akbari's billed hours for excessive time spent reviewing medical literature); *Reinhardt v. Sec'y of Health & Hum. Servs.*, No 17-1257V, 2021 WL 2373818, at *5 (Fed. Cl. Spec. Mstr. Apr. 22, 2021) (deducting 20% of Dr. Akbari's billed hours spent reviewing medical literature).

Here, Dr. Akbari billed roughly 26 hours for medical literature review. Fees App., Ex. 174-75. By contrast, Dr. Axelrod submitted the same number of expert reports in this case and billed a total of 35.75 hours, 14 of which were for "[r]esearch." Fees App., Ex. 173 at 27-28, 32. I find the hours billed by Dr. Akbari for medical literature review to be excessive.

As noted, in making reductions, a line-by-line evaluation is not required. *Broekelschen*, 102 Fed. Cl. at 729; *see also Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1991). Rather, special masters may "render a decision based on general guidelines as to a reasonable fee" in the context of the Vaccine Program and in the context of a particular case. *Wasson*, 24 Cl. Ct. at 484. Special masters are permitted to use their discretion to take an across-the-board reduction in appropriate circumstances. *See Humphries v. Sec'y of Health & Hum. Servs.*, No. 17-288V, 2021 WL 5444097, at *5 (Fed. Cl. Spec. Mstr. Oct. 26, 2021). I find that a 20% reduction is appropriate to account for the billing of administrative tasks and excessive billing to review medical literature. *See Nieves v. Sec'y of Health & Hum. Servs.*, No. 18-1602V, 2023 WL 7131801, at *5 (Fed. Cl. Spec. Mstr. Oct. 2, 2023) (reducing Dr. Akbari's hours by 20% for excessive billing); *Reinhardt*, 2021 WL 2373818, at *4 (reducing Dr. Akbari's hours by 20% after

finding his billing to be "well in excess of the time spent by other experts in cases of comparable complexity"). Accordingly, I will reduce Dr. Akbari's requested time by 20%, for a total reduction of 14.3 hours.

I award a total of $28,600.00 for costs associated with Dr. Akbari's work.[6]

I award Petitioner a total of **$43,817.01** in attorneys' costs.[7]

## III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT IN PART** Petitioner's application. Petitioner is awarded interim attorneys' fees and costs in the total amount of **$151,681.71** as follows:

- A lump sum in the amount of **$151,681.71**, representing reimbursement of Petitioner's interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[6] This total reflects the 20% deduction to the 71.5 hours Dr. Akbari billed at a rate of $500.00 per hour. (71.5 hours - (71.5 hours x 20% deduction) = 57.2 hours x $500.00 hourly rate = $28,600.00 award).

[7] Petitioner is awarded $510.61 for medical record requests; $4.40 for postage; $402.00 for a new petition filing fee; $14,300.00 for Dr. Axelrod's expert report; and $28,600.00 for Dr. Akbari's expert report; totaling $43,817.01.

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.